UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JANE M. A.[1],

                      Plaintiff,

v.                                                                                         CASE # 19-cv-00808

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                                                    OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC       JUSTIN DAVID JONES, ESQ.
  Counsel for Plaintiff                                           KENNETH R. HILLER, ESQ.
600 North Bailey Ave                                                LEWIS L. SCHWARTZ, ESQ.
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                        RICHARD W. PRUETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born on June 11, 1965, and has greater than a high school education. (Tr. 117, 151). Generally, plaintiff's alleged disability at the time of application was major depressive disorder, panic disorder, anxiety disorder, fibromyalgia, Xanax dependency, and thyroid disorder. (Tr. 150). Her alleged onset date of disability was December 31, 2008. (Tr. 126). Her date last insured was December 31, 2013. (Tr. 126). She subsequently amended her alleged onset date to November 1, 2011 and requested a closed period of disability through September 1, 2016. (Tr. 445).

### B.     Procedural History

On April 23, 2013, plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (Tr. 117). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 10, 2015, plaintiff appeared before the ALJ, Donald McDougall. (Tr. 29-58). On April 2, 2015 ALJ McDougall issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 10-28). On July 14, 2016, the Appeals Council ("AC") denied plaintiff's request for review. (Tr. 1-6). Thereafter, plaintiff filed an appeal, bringing a lawsuit in the United States District Court for the Western District of New York. (Tr. 532). The Court issued a decision and order remanding the case on October 6, 2017. (Tr. 541). On January 10, 2018, the Appeals Council issued an order for a new administrative hearing. (Tr. 546). Plaintiff appeared and testified at a second hearing on January 22, 2019, before ALJ Stephen Cordovani. (Tr. 466-506). ALJ

Cordovani issued an unfavorable decision on February 13, 2019 finding plaintiff not disabled. (Tr. 441-459). Thereafter, plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2013 (Exhibit 5D, p. 1; and Exhibit 11D).

2. The claimant did not engage in substantial gainful activity during the period from her amended onset date of November 1, 2011 through her date last insured of December 31, 2013 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical, thoracic and lumbar spine and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional overhead reaching; occasional pushing and pulling; occasional climbing of ramps, stairs, stoop and bend; no kneeling, crouching, crawling; no climbing of ladders, ropes or scaffolds; no work around unprotected heights or dangerous moving mechanical parts; occasional driving; no continuous sitting or walking greater than 60 minutes; can change position up to every ½ hour, alternating between sitting and standing; and no bending at the waist to the floor.

6. Through the date last insured, the claimant was capable of performing past relevant work as a software salesperson, insurance sales broker and telephone solicitor. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from her amended onset date of November 1, 2011, through December 31, 2013, the date last insured (20 CFR 404.1520)(f)).

(Tr. 441-458).

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, she argues the ALJ did not properly evaluate her mental impairments at Step Two. (Dkt. No. 9 at 9 [Plaintiff's Mem. of Law]). Second, the ALJ erred by relying on a vague consultative examination to support his RFC determination. (Dkt. No. 9 at 15).

### B.     Defendant's Arguments

In response, defendant asserts two arguments. First, defendant argues the ALJ properly considered the mental impairments and reasonably found no mental limitations should be included in the RFC. (Dkt. No. 12 at 11 [Defendant's Mem. of Law]). Second, defendant argues the consultative examiner's opinion, along with other opinion evidence and clinical findings, provided substantial evidence for the ALJ's findings as to physical limitations in the RFC. (Dkt. No. 12 at 14).

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant

will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme

Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A. Evaluation of Mental Impairments

ALJ Cordovani found the plaintiff's hypothyroidism, asthma, left ear conductive hearing loss, irritable bowel syndrome, gastroesophageal reflux disease, major depressive disorder, generalized anxiety disorder, and panic disorder were nonsevere impairments. (Tr. 448). Plaintiff argues the ALJ erred at Step Two of the evaluation by improperly finding her mental impairments nonsevere because "mental health treatment reveals these were severe impairments." (Dkt. No. 9 at 10). Contrary to plaintiff's argument, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013). Plaintiff also argues it was error for the ALJ to rely on a nonexaming opinion and a consultative examination in making this determination. (Dkt. No. 9 at 11). However, ALJ's decision shows a thorough analysis of the mental impairments which is supported by substantial evidence.

When evaluating alleged mental health impairments, in addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520, the ALJ must apply a "special technique" at the second and third steps. *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir.2008). As the Second Circuit has explained:

> This technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1).

In this case, the ALJ properly provided specific findings regarding the degree of limitation in each of the four functional areas of the "special technique" when evaluating the mental impairments, showing his decision was based on substantial evidence and not solely one or two opinions as alleged. (Tr. 450). Plaintiff does not identify any specific errors by the ALJ in this analysis and does not identify evidence of greater limitations in any functional area.

ALJ Cordovani cited to not only the findings of consultative examiner Dr. Fabiano and non-examining review physician Dr. Echevarria, but also mental health records and reported daily activities. (Tr. 450-451). Regardless, the Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r*

*of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016).

Additionally, as argued by defendant, failure to find mental impairments not severe is not reversible error at Step Two because the ALJ continued with the other steps of the evaluation while considering all of plaintiff's impairments. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (unpublished) (where an ALJ proceeds past step two and considers the effects of all of a claimant's impairments through the remainder of the sequential evaluation process, any error at step two is harmless). The ALJ clearly considered plaintiff's non-severe mental impairments in the later steps of the sequential analysis as evidenced by his comprehensive review of plaintiff's mental health records. (Tr. 454-457). The ALJ referenced the consistently normal clinical findings, Dr. Fabiano's clinical findings and medical opinion, Dr. Echevarria's medical opinion, and Dr. Ashton's consistent GAF scores which all demonstrated only mild limitations. (Tr. 454-457).

In the alternative, plaintiff asserts the ALJ erred by failing to account for plaintiff's nonsevere mental impairments in the RFC. (Dkt. No. 9 at 1). However, as discussed briefly above, the ALJ's decision to exclude any mental limitations in the RFC was supported by substantial evidence because the medical and opinion evidence unquestionably supported a finding that plaintiff had only mild limitations from any mental impairments. Medical records evidence supporting only mild limitations includes:

> (1) Consistently normal mental status examinations but for being anxious (Tr. 259, 261, 263, 265, 267, 269, 271, 273, 275, 277, 279, 281, 284, 287, 290, 319, 323); (2) denial of any psychiatric symptoms in April 2014 (Tr. 318); (3) Dr. Ashton continuously assigned Plaintiff global assessment of functioning (GAF) scores between 61 and 70, indicating only mild symptoms, assigned by Dr. Ashton (Tr. 259, 262, 264, 266, 268, 270, 272, 274, 276, 278, 280, 282, 285, 288, 291); (4) fully normal mental status examination by Dr. Fabiano in July 2013 (Tr. 296-97); (5) Dr. Fabiano's opinion of only mild limitations with relating to others and dealing with stress, and no other limitations (Tr. 297); (6) Dr. Echevarria's opinion of only mild limitations with activities of daily living and social functioning with conclusion that plaintiff's mental impairments were non-severe (Tr. 65).

Plaintiff does not point to any evidence suggesting greater limitations but inaccurately argues that mild limitations require the addition of mental limitations in the RFC. (Dkt. No. 9 at 13-15). Indeed, Dr. Fabiano opined plaintiff would have mild limitations dealing with stress and interacting with others. (Tr 297). However, there are no regulations that mild limitations require mental limitations in the RFC. Rather, looking back to Step Two, a finding of only mild limitations would cease the analysis and benefits would be denied. *See Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (If the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the ALJ will generally conclude that the claimant's mental impairment is not severe and will deny benefits).

The ALJ properly evaluated the mental impairments at Step Two and reasonably considered such impairments at subsequent steps and accordingly found the mild limitations resulting from the non-severe impairments did not warrant any mental restrictions in the RFC. Plaintiff's additional arguments that the mild stress limitations were also not properly considered at Step Four is without merit for the same reasoning discussed above. The Second Circuit has held that even moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."). Plaintiff argues that "even minimal mental restrictions would have precluded" the jobs identified at Step Four by the ALJ but offers no evidence of mental restrictions beyond the mild limitations of dealing with stress and interacting with others opined by Dr. Fabiano. (Dkt. No. 9-14-15).

**B. Physical RFC**

In a two-pronged challenge to consultative examiner Dr. Liu, plaintiff describes his opinion as vague and problematic because it is the only physical opinion of record after a one-time exam to which the ALJ assigned great weight. (Dkt. No. 9 at 15). Dr. Liu's clinical findings from the July 11, 2013 exam included:

> Plaintiff could not perform heel walking because of back pain but could squat to 90 percent of full. She could walk on toes with moderate difficulty reportedly because of back pain but she appeared to be in no acute distress, her gait and stance were normal, she needed no help changing for the exam or getting on and off the exam table, and she was able to rise from a chair without difficulty. Plaintiff had decreased lumbar spine and bilateral shoulder range of motion and she had positive straight leg raising tests but she had no sensory deficits, had intact reflexes, full strength of the extremities, full grip strength, no atrophy, and full dexterity of the hands. Plaintiff exhibited full range of motion of the elbows, forearms, wrists, hips, knees, and ankles with no subluxation, contractures, ankylosis, or thickening. (Tr. 300-301).

Dr. Liu opined that plaintiff had a "mild to moderate limitation for prolonged walking, bending, kneeling, and overhead reaching." (Tr. 302). The findings on exam all support the ALJ's RFC and plaintiff has not identified any evidence of limitations greater than those found by the ALJ.

As recognized above, an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e). However, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Plaintiff's arguments that Dr. Liu's opinion did not constitute substantial evidence because it is unclear if MRI evidence was reviewed is unavailing. A consultative examiner is not required

to obtain or review laboratory reports or treatment records. *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (the ALJ did not commit reversible error for relying on the opinion of a consultative examiner where the examiner did not review plaintiff's record, however he personally examined plaintiff and reached conclusions consistent with the objective medical evidence in the record); *see Genito v. Comm'r of Soc. Sec.,* No. 7:16-CV-0143 (GTS), 2017 WL 1318002, at *9 (N.D.N.Y. Apr. 7, 2017) ("there is no legal requirement that opinion sources must have access to a full and complete record in order for their opinions to be sufficient to constitute substantial evidence"); *see* 20 C.F.R. § 404.1519n(c)(1)-(7) (elements of a complete consultative examination). Dr. Liu took a complete history of plaintiff's complaints and treatment, reviewed medication, took a social history and activities of daily living, performed a complete physical examination and provided diagnosis with prognosis. (Tr. 300-302). Therefore, the ALJ did not commit legal error in relying on the opinion of a consultative examiner who may not have reviewed plaintiff's entire record.

A plain reading of the decision also reveals the ALJ considered more than just the examination and opinion of Dr. Liu in his RFC analysis. *See* 20 C.F.R. § 404.1527(c)(4) (ALJ considers whether an opinion is consistent with the record as a whole). ALJ Cordovani considered the clinical findings and objective evidence from treating sources Renee Buckley-Bleiler and Dr. Vigna in determining the RFC. For example, in November 2013, plaintiff reported no musculoskeletal symptoms and Physician's Assistant Buckley-Bleiler noted a normal physical examination. (Tr. 323). Although after the closed period, the ALJ detailed Dr. Vigna's April 2014 findings with commensurate limitations in the RFC. (Tr. 319, 415). The ALJ also cited the consistency between mild findings from a May 2014 MRI and plaintiff's denial of musculoskeletal problems in assessing the RFC limitations. (Tr. 455, 817). Plaintiff does not cite any records that

are contrary to the ALJ's RFC or evidence of greater limitations than opined by Dr. Liu but simply disagrees with the weight accorded. (Dkt. No. 9 at 17).

Although the ALJ properly cited additional evidence to support the physical RFC finding, he was also entitled to rely on the opinion of Dr. Liu because it was consistent with the medical record. *See David W. v. Comm'r of Soc. Sec.*, 8:17-CV-0734 (CFH), 2018 WL 6088095, at *8 (N.D.N.Y. Nov. 20, 2018); *see also Hernandez v. Comm'r of Soc. Sec.*, 116CV07584ERSDA, 2018 WL 3300693, at *16 (S.D.N.Y. Feb. 15, 2018) (adopted *sub nom. Hernandez v. Berryhill*, 16CIV7584ERSDA, 2018 WL 1581688 (S.D.N.Y. Mar. 28, 2018); "The ALJ is permitted to rely heavily on the opinion evidence of a medical expert when assessing RFC, so long as the opinion is consistent with the evidence in the medical record"). The ALJ's physical RFC was supported by substantial evidence and there was no error warranting remand.

**ACCORDINGLY, it is**

    **ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

        **DENIED;** and it is further

    **ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 12) is

        **GRANTED.**

Dated: January 7, 2021           *J. Gregory Wehrman*
Rochester, New York          HON. J. Gregory Wehrman
                                      United States Magistrate Judge